IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN   DIVISION

UNITED STATES OF AMERICA

VS.                                                                CR 05-PT-61-S

JEWELL C. "CHRIS" McNAIR
GRADY R. "ROLAND" PUGH
JOSEPH E. "EDDIE" YESSICK
ROLAND PUGH CONSTRUCTION, INC.
BOBBY J. RAST
DANIEL B. "DANNY" RAST,
RAST CONSTRUCTION, INC.
FLOYD W. "PAT" DOUGHERTY
F. W. DOUGHERTY ENGINEERING
& ASSOCIATES, INC.

        **Defendants**

## MEMORANDUM OPINION

### RE: *QUID PRO QUO*

An issue which permeates various motions and arguments in this case relates to whether the Government must allege and prove specific claims of *quid pro quo* with regard to Title 18 Section 666 conspiracy and substantive counts.  The court will herein generally discuss the issue and adopts  this memorandum opinion as to any specific motions wherein that issue is raised.

The issue of whether there must be an allegation and proof of a specific *quid pro quo* under Title 18  Section 666 is at least partially illuminated by a consideration of cases which discuss Title 18  Section 201.  Section 201 has provisions relating to both "bribery" and to

1

"illegal gratuities."[1]

In *U. S. v. Sun-Diamond Growers of Calif.*, 526 U. S. 398, 404 (1999), the court distinguished between "bribery" as described in §§ 201(b)(1) and 201 (b)(2) and "illegal gratuity" as described in §§ 201(c)(1)(A) and 201(c)(1)(B). The Court stated, "The distinguishing feature of each crime is its intent element. Bribery requires intent 'to influence' an official act, while illegal gratuity requires only that the gratuity be given or accepted 'for or because of' an official act. In other words, for bribery there must be a *quid pro quo* - a specific intent to give or receive something of value in exchange for an official act."

While *Sun-Diamond* suggests that bribery requires some proof of a *quid pro quo*, it does not say that there must be an allegation or proof of a specific act, only "something of value" intended to influence. To the contrary, the *Sun-Diamond* court notes, without disapproval, that the U. S. Court of Appeals for the District of Columbia Circuit, "stated that the Government need not show that a gratuity was given 'for or because of' any particular act or acts: 'That an official has an abundance of relevant matters on his plate should not insulate him or his benefactors from the gratuity statute –as long as the jury is required to find the requisite intent to reward the past favorable acts or to make future ones more likely.' *Id.*, at 969." 526 U.S. at 403-04. While *Sun-Diamond* involved illegal gratuities, this language is pertinent to the bribery provisions of Section 666.

Section 666 makes no reference to any specific *quid pro quo*. It refers to "corruptly" and "intent to influence or reward." This court recognizes that a generalized hope of some future

---

[1] The term "bribery" is sometimes referred to in the captions of statutes, but not in the provisions thereof. The court in *U. S. v. Medley*, 913 F.2d 1248, 1258 (7th Cir. 1990) agreed that the term "bribery" is "merely a 'shorthand way' of explaining the statutory charge ... ."

benefit or a vague expectation of some future benefit may not be sufficient to make a payment a bribe. The key is whether a payment was "corruptly" made or received with the intent to influence or be influenced.

It cannot be reasonably disputed that Section 666 does not require that the government trace the flow of federal funds to any particular project. *U. S. v. Paradies*, 98 F.3d 1266, 1288 (11th Cir. 1996); *U. S. v. Fischer*, 168 F.3d 1273 (11th Cir. 1999). *Aff'd* 529 U. S. 667 *U. S. v. Bonito*, 57 F.3d 167, 172-73 (2d Cir. 1996).

The Eleventh Circuit Pattern Criminal Jury Instructions with regard to Section 666 does not suggest the necessity of finding any specific *quid pro quo*. In essence, the pertinent elements are knowingly accepting or agreeing to accept (or give) a thing of value with the intent to be rewarded (or reward) in connection with a transaction or series of transactions.

The court in *U. S. v. Jennings*, 160 F.3d 1006, 1014 directly addressed the issue. The court states:

> Direct evidence of intent is unnecessary, however. To prove bribery under § 201, the government is not required to prove an expressed intention (or agreement) to engage in a quid pro quo. Such an intent may be established by circumstantial evidence. *See United States v. Massey*, 89 F.3d 1433, 1439 (11th Cir.1996); *United States v. Biaggi*, 909 F.2d 662, 684 (2d Cir.1990). Also, the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions). Bribery requires the intent to effect an exchange of money (or gifts) for specific official action (or inaction), but each payment need not be correlated with a specific official act. *See Arthur*, 544 F.2d at 734. Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action. *See id*. In other words, the intended exchange in bribery can be "this for these" or "these for these," not just "this for that." Further, it is not necessary for the government to prove that the payor intended to induce the official to perform a set number of official acts in return for the payments. The

quid pro quo requirement is satisfied so long as the evidence shows a "course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." *Id*. (internal quotation omitted). Thus, all that must be shown is that payments were made with the intent of securing a specific type of official action or favor in return. For example, payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf. *See id*. This sort of "I'll scratch your back if you scratch mine" arrangement constitutes bribery because the payor made payments with the intent to exchange them for specific official action.

The court further states:

> Jennings argues that § 666 adopts § 201's bribe regime and then stops. He points out that § 666(a)(2) only prohibits payments given"corruptly," just like the general bribery provision, § 201(b), and unlike the illegal gratuity provision, § 201(c). This similarity to § 201(b) (and corresponding dissimilarity to § 201(c)), Jennings claims, shows that § 666 prohibits only bribery. Moreover, § 666's punishment provision allows up to ten years in prison, with nothing comparable to § 201(c)'s two-year cap for an illegal gratuity. *See*18 U.S.C. § 666(a). Thus, Jennings argues that in order to convict him, the government had to prove that he bribed Morris.
>
> As we explain below (in part II.C.), Jennings's conviction must stand because the evidence was sufficient to prove that he intended to influence Morris's official acts by paying him money, that is, Jennings intended to engage in a quid pro quo. Jennings's intent therefore was sufficiently corrupt to call his payments "bribes" (or "rewards").As a result, we need not decide today whether § 666 also covers "gratuities," that is, payments made for or because of an official act.

*U.S. v. Jennings*, 160 F.3d at 1014-15.  (Footnotes omitted).

. . . .

> Under § 666(a)(2) the intent of the payor, not the intent of the payee, is determinative of whether a crime occurred. *See Mariano*, 983 F.2d at 1159 ("The common thread that runs through [18 U.S.C. §§ 666(a)(2) and 201(b) ] is the intent of the payer, by the greasing of palms, to affect the future actions of a public official."); *see also Campbell*, 684 F.2d at 148 n. 11("the donor may be convicted of giving a bribe even despite the fact that the recipient had no intention

> of altering his official activities" (internal quotation omitted)). Thus, the only intent at issue was Jennings's: if he gave money to Morris with the requisite corrupt intent, Jennings violated the statute regardless of Morris's intent in accepting the money.
>
> . . . .
>
> Even if the evidence did not necessarily link each of Jennings's payments to a specific official act by Morris, a reasonable juror could still conclude that Jennings paid bribes. Over a fairly short period Morris approved over $650,000 worth of contracts for Jennings's companies, and Jennings paid Morris over $7,000 in cash. Again, a reasonable juror could have concluded that there was a course of conduct involving payments flowing from Jennings to Morris in exchange for a pattern of official actions favorable to Jennings's companies, and that was sufficient to convict Jennings of bribery. *See Arthur*, 544 F.2d at 734. Accordingly, the district court did not err when it denied Jennings's motion for an acquittal.

*U. S. v. Jennings,* 160 F.3d at 1017-18.

This court recommends a full reading of *Jennings*.

In *Sabri v. United States ,* 541 *U.* S. 600, 605-06 (2004), the court stated:

> <u>It is true, just as Sabri says, that not every bribe or kickback offered or paid to agents of governments covered by § 666(b) will be traceably skimmed from specific federal payments, or show up in the guise of *quid pro quo* for some dereliction in spending a federal grant.</u> Cf. *Salinas v. United States*, 522 U.S. 52, 56-57, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (The "expansive, unqualified" language of the statute "does not support the interpretation that federal funds must be affected to violation § 666(a)(1)(B)"). <u>But this possibility portends no enforcement beyond the scope of federal interest, for the reason that corruption does not have to be that limited to affect the federal interest. Money is fungible, bribed officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value.</u> Liquidity is not a financial term for nothing; money can be drained off here because a federal grant is pouring in there. <u>And officials are not any the less threatening to the objects behind federal spending just because they may accept general retainers.</u> See *Westfall v. United States*, 274 U.S. 256, 259, 47 S.Ct. 629, 71 L.Ed. 1036 (1927) (majority opinion by Holmes, J.) (upholding federal law criminalizing fraud on a state bank member of

federal system, even where federal funds not directly implicated). It is certainly enough that the statutes condition the offense on a threshold amount of federal dollars defining the federal interest, such as that provided here, and on a bribe that goes well beyond liquor and cigars. (Emphasis added).

In *U. S. v. Medley*, 913 F.3d 1248, 1260 (7th Cir. 1990), the court states:

> Nor is this a case where some distinction has to be drawn between a bribe and a gratuity, which are both illegal under different parts of the statute. In practice those two charges, in which the intent involved is important, have been difficult to distinguish. *United States v. Strand*, 574 F.2d 993, 995 (9th Cir. 1978); *United States v. Arroyo*, 581 F.2d 649 (7th Cir. 1978), *cert. denied*, 439 U. S. 1069, 99 S.Ct. 838, 59 L.Ed.2d 34 (1979); *United States v. Brewster*, 506 F.2d 62 (D.C.Cir. 1974). The essential element of a section 666 violation is a "quid pro quo"; that is, whether the payment was accepted to influence and reward an official for an improper act.

This court is satisfied that the *quid pro quo* required is proof of the intent to corruptly influence or be influenced as to some one or more acts or series of acts, not some specifically defined act or acts that must be alleged.

This the 27th day of March, 2006.

/s/ Robert B. Propst
_____
**ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE**